In the Matter of TERRY A. DAVIS, Individually and as President of the Carthage Police Benevolent Association of Carthage, Appellant, v LEON F. MAINE, as President of the Trustees of the Village of Carthage, et al., Respondents.—Order unanimously reversed, without costs, and petition granted. Memorandum: Petitioner, a police officer with the Village of Carthage, appeals from the dismissal of his petition for a writ of mandamus pursuant to CPLR 7801 directing respondents to make salary payments to him in accordance with the terms of the contract between respondents and the Carthage Police Benevolent Association. Petitioner urges, *inter alia,* that Special Term erred in construing the contract in light of extrinsic evidence submitted in respondents' affidavits concerning their intentions in approving the contract. We agree. The minutes of the meetings of the village trustees show that petitioner, who was first hired by the village as a police officer on June 22, 1975, resigned on April 23, 1977 and returned to the same employment on October 11, 1977. On October 2, 1978, the Police Benevolent Association, of which petitioner was president, submitted a proposed salary schedule, denominated articles 15 and 16, to the village trustees for approval. Respondent Maine, president of the trustees, signed articles 15 and 16 and the trustees approved them on November 6, 1978, to be effective on March 1, 1979. Article 15 names each of the four police officers of the village, sets forth a specific salary for each, and provides: "These salaries will reflect the annual increment of $330.40 for the number of years that an officer has been on the job as a police officer for the Village of Carthage, New York." Article 16 sets forth the general pay

scale for police officers according to the number of years of service and reflecting the annual increment of $330.40. The salary specified for petitioner in article 15 is $11,669.60, that set forth in article 16 for officers with four years' service. The trustees on January 8, 1979 in effect reformed the contract by adopting a resolution stating that for purposes of salary and longevity petitioner's service commenced on October 11, 1977. Thereafter, they reduced his salary to $10,678.40, that allotted in article 16 to a patrolman with one year's service. Respondent Maine avers that when he signed the contract he did not realize that petitioner was being credited with service back to his original appointment in 1975 and that he intended that petitioner should be paid a salary commensurate with one year's service. We reject respondents' claim that articles 15 and 16 are ambiguous and should be construed in light of extrinsic evidence indicative of the parties' intentions. Articles 15 and 16 show on their face that petitioner is assigned a salary of $11,669.60, the amount specified for officers with four years' service. The clear meaning of the articles is that the respondents are crediting him with four years' service irrespective of the six-month interruption. Nor is there any basis for judicial sanction of respondents' unilateral modification of the contract upon the ground that the record supports reformation by the court. "The general rule is that equity will reform instruments for the correction of errors where, by mistake, they do not conform to the intention of the parties, that is to say, by mutual mistake, or by mistake of one party and fraud or inequitable conduct of the other" (6 NY Jur, Reformation of Instruments, § 40; see 3 Corbin, Contracts, § 614; 13 Williston, Contracts [3d ed], § 1548). Respondents do not claim that there was a mutual mistake and the record does not support such a determination. Nor does the record support a finding of mistake of one party and fraud or inequitable conduct of the other. There is no allegation of any specific misrepresentation or false statement of fact and no suggestion that petitioner attempted to conceal or misrepresent any circumstance associated with his employment with the village. He simply submitted articles 15 and 16 which clearly show on their face that he was allotted a salary commensurate with four years of service. Respondents had more than a month in which to decide whether to approve or reject the contract and the minutes of their meetings show that they were in possession of all information necessary to ascertain the appropriate salary for petitioner. Respondents offer no evidence which would justify or explain their alleged mistake in approving the salary or would warrant relief therefrom. Inasmuch as the opportunities of both parties to obtain information were equal and there is no showing of fraud or misrepresentation, the contract should be enforced as written (see *Walsh v Keogh,* 282 App Div 378, 381, affd 306 NY 933, quoting 30 CJS, Equity, § 47, p 376). There is no merit to petitioner's argument that pursuant to subdivision 2 of section 80 of the Civil Service Law his service began on June 22, 1975 as a matter of law. Section 80 concerns suspension or demotion upon the abolition or reduction of positions. Thus, subdivision 2, which provides that "An employee who has resigned and who has been reinstated or reappointed in the service within one year thereafter shall, *for the purposes of this section,* be deemed to have continuous service" (emphasis added), by its own terms pertains only to computation of relative degrees of seniority in the event of abolition or reduction of a posi-

tion, a situation not before us. (Appeal from order of Jefferson Supreme Court—art 78.) Present—Dillon, P. J., Simons, Hancock, Jr., Callahan and Moule, JJ.